IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

Vs.                                                        No. 98-40097-01-SAC

SHAWN E. STEWART,

        Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the defendant Shawn Stewart's motion under 18 U.S.C. § 3582(c)(1)(A)(i) asking the court to grant compassionate release and reduce his sentence to time served. ECF# 134. In February of 1999, Mr. Stewart pleaded guilty to six counts of Hobbs Act robbery, 18 U.S.C. § 1951, and two counts of using a firearm in furtherance of a crime of violence (Hobbs Act robbery), 18 U.S.C. § 924(c)(1). For the six § 1951 robbery convictions, Mr. Stewart was sentenced to 78 months imprisonment (the low end of the sentencing guideline range) to be served concurrently. For the first § 924(c)(1) conviction, he received the statutorily required term of 60 months to be served consecutively. For the second § 924(c)(1) conviction, he was sentenced to the statutorily required term of 240 months to be served consecutively. The judgment committed him to imprisonment for a total term of 378 months or 31.5 years. According to the defendant, his earliest projected release date is in September of 2025. The procedural history to this case is correctly summarized in the parties' briefs and is omitted from the order because it does not

1

bear directly on the issues being advanced in the pending motion.

Mr. Stewart sent a written Compassionate Release Request to the Warden of MCFP Springfield on April 28, 2020, based on the "extraordinary and compelling circumstances" that the First Step Act "rejected the judicially-created rule of stacking multiple" § 924(c) convictions, and if sentenced today, his sentence would be 16.5 years instead of 31.5 years. ECF# 134-1, p. 1. Mr. Stewart represented that he has served approximately 22 years of the current sentence. *Id.* The warden denied the request on May 12, 2020, stating that the request did "not meet the Reduction in Sentence criteria." ECF## 134-3.

Following the warden's denial, Mr. Stewart filed in this court his pending motion under 18 U.S.C. § 3582(c)(1)(A)(i) arguing a sentence reduction was warranted by extraordinary and compelling circumstances. First, that Congress "'clarified' the judicially-created rule on stacking multiple" § 924(c) convictions such that if he had been sentenced after the First Step Act he would have faced a mandatory sentence of only 10 years, not 25 years. Second, that under the current COVID-19 pandemic, he is vulnerable to severe illness due to suffering from asthma. The defendant does not request a hearing, and none is necessary. *See United States v. Denson*, 963 F.3d 1080, 2020 WL 3445820, at *8 (11th Cir. Jun. 24, 2020).

Established Tenth Circuit case law authorizes a district court "to modify defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so." *United States v. White,* 765 F.3d 1240, 1244 (10th Cir. 2014) (internal quotation marks and citation omitted), *cert. denied*, 574

2

U.S. 1101 (2015). "'Unless the basis for resentencing falls within one of the specific categories authorized by § 3582(c), the district court lacked jurisdiction to consider [the defendant's] request.'" *United States v. Saldana*, 807 Fed. Appx. 816, 819, 2020 WL 1486892 at *3 (10th Cir. Mar. 26, 2020). In the absence "of a few narrowly defined statutory exceptions, . . . , federal courts generally lack jurisdiction to modify a term of imprisonment once it has been imposed." *White*, 765 F.3d at 1244-45. One such exception is 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), Pub. L. No. 115-39, 132 Stat. 5194 (Dec. 21, 2018), authorizes modification of a sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . . ." With the government's concurrence, the court finds that Mr. Stewart has satisfied this exhaustion requirement. It remains Mr. Stewart's "burden of establishing that compassionate release is warranted under the statute." *United States v. Pullen*, No. 98-40080-JAR, 2020 WL 4049899, at *2 (D. Kan. July 20, 2020) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Bright*, No. 14-10098-JTM, 2020 WL 473323, at *1 (D. Kan. Jan. 29, 2020) ("extraordinary and compelling" standard imposes a heavy burden on an inmate seeking compassionate release under § 3582(c)(1)(A))).

Therefore, the court may modify a sentence on the defendant's motion, after considering the applicable factors set forth in section 3553(a), and upon finding

3

that "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(1)(A). Congress has directed the Sentencing Commission:

> (t) The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t). The Sentencing Commission's policy statement on compassionate release is set forth in U.S. Sentencing Guidelines § 1B1.13. This policy permits a court to reduce the term of imprisonment after considering § 3553(a) factors if (1) "[e]xtraordinary and compelling reasons warrant the reduction;" (2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) [t]he reduction is consistent with this policy statement." Application Note 1 to this policy statement provides the following:

> **1. Extraordinary and Compelling Reasons.**--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> **(A) Medical Condition of the Defendant.—**
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is--
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health

>          because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>          **(B) Age of the Defendant.**--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>          **(C) Family Circumstances.**--
>               (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>               (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>          **(D) Other Reasons.**--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 (n.1) (2019).

The Commission has yet to amend this application note since the FSA's passage. This is significant because Mr. Stewart relies on "(D) Other Reasons" which applies, on its face, only when the Director of the BOP determines such a reason to exist. In an unpublished decision, the Tenth Circuit looked to BOP Program Statement 5050.50 as identifying

> several nonexclusive factors to determine whether "other" extraordinary and compelling reasons exist:   the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentence, release plans, and "[w]hether release would minimize the severity of the offense."

*United States v. Saldana,* ---Fed. Appx.---, 2020 WL 1486892 at *2 (10th Cir. Mar. 26, 2020) (quoting BOP Program Statement 5050.50 at 12 (2019)). This Program Statement was written after the FSA. It also includes the following about these other factors:

5

"When reviewing RIS requests, these factors are neither exclusive nor weighted. These factors should be considered to assess whether the RIS request presents particularly extraordinary and compelling circumstances." BOP Program Statement 5050.50 at 12. The above language suggests the "other reasons" would not only be circumstances personal to the moving defendant but be "particularly extraordinary and compelling." As stated, these factors are not exclusive but do include considering the length of the defendant's sentence and the amount of time served.

Of course, the *Saldana* decision is not binding precedent. And, the recent BOP Program Statement is not a Commission policy statement. Moreover, most courts in the District of Kansas, to date, have followed the lead of a majority of other district courts in holding that U.S.S.G. § 1B1.13 should now be applied as giving the district courts the same discretion given to the BOP Director under (D) to determine extraordinary and compelling reasons in the district courts. *See United States v. Pullen*, No. 98-40080-01-JAR, 2020 WL 4049899, at *3, n.28 (D. Kan. Jul 20, 2020) (and cases cited therein). The following summarizes the thinking of the courts on this:

> Accordingly, "a growing consensus of courts across the country have concluded that, after the First Step Act, the Commission's policy statement 'does not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).'" In an unpublished opinion, Judge Marten recently joined the majority of district courts concluding that it has the authority to exercise the same discretion as the BOP when weighing a request for compassionate relief in a case that did not raise the risk of COVID-19, but where the defendant was over the age of 70 and had served over thirty years in prison on his convictions.
> The Court finds this authority persuasive—indeed, anything less than the same discretion as the Director of the BOP would be "antithetical to the First Step Act," and have "the perverse effect of penalizing prisoners who take advantage of the First Step Act's fast-track procedures and rewarding prisoners

> who endure the BOP-related delay that the Act sought to alleviate." The Court joins the majority of courts finding that it has the authority to independently assess whether there are extraordinary and compelling reasons to reduce Defendant's sentence. Therefore, the Court proceeds to ensure that its conclusions are consistent with the Sentencing Commission's policy statements but independently assesses whether Defendant presents "extraordinary and compelling reasons" justifying a reduction in sentence.

*United States v. Lavy*, No. 17-20033-JAR, 2020 WL 3218110, at *3-4 (D. Kan. Jun. 15, 2020) (footnotes and citations omitted); *see also United States v. Younger,* No. 16-40012-02-DDC, 2020 WL 3429490 at *4-*5 (D. Kan. Jun. 23, 2020) (Following the majority, the court rejects reading (D) as only invokable by the BOP and finds it may decide whether extraordinary and compelling reasons warrant compassionate release); *United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764 at *3 (D. Kan. May 29, 2020)("The overwhelming majority of courts, . . . have . . . concluded that a court may make the necessary determination that other circumstances warrant relief under this statute."); *United States v. Perez*, No. 88-10094-JTM, 2020 WL 1180719 (D. Kan. Mar. 11, 2020)("[A] majority of federal district courts have found that "the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." *United States v. Brown*, No. 4:05-CR-00227-1, 2019 WL 4942051, at *4 (S.D. Iowa Oct. 8, 2019)); *United States v. Adeyemi*, 2020 WL 3642478, at *10 (E.D. Pa. Jul. 6, 2020) ("A vast majority of judges considering whether courts may independently evaluate extraordinary and compelling reasons to reduce sentences have concluded they can." (and cases cited therein)). The court is persuaded by the weight of this authority and by the courts' reasoning for

applying "(D) Other Reasons" to give district courts the same discretion as the BOP Director has to determine "extraordinary and compelling" reasons consistent with the statutory purpose of the FSA.

Stacked § 924(c) Sentences

The government recognizes that Judge Marten in our district and "many other district courts" have recognized as an extraordinary and compelling reason the the FSA's elimination of this stacking practice under § 924(c) and the radical effect upon a defendant's sentence. ECF# 137, p. 14. The government, however, asks the court to reject this approach for several reasons. The BOP has not promulgated regulations or issued a program statement that contemplates a reduction in mandatory minimum sentences as a qualifying "(D) Other Reason." On the weight of the authority cited above, this court already has ruled that it has the same discretion as the BOP Director to determine what other reasons qualify as extraordinary and compelling reasons. And even if it had to draw some connection to the BOP Director's program statement, the court would point to the Director's reference to the "length of sentence and amount of time served." BOP Program Statement 5050.50. Mr. Stewart's sentence is substantially longer than the sentences imposed today for the same conduct, and he has already served over five years more than the sentence he would have received today.

The government next contends Mr. Stewart's request effectively results in making retroactive Congress's change in the stacking of § 924(c) convictions and, therefore, works an "end run" around Congress's decision not to make this change

8

retroactive in the FSA. Judge Marten has reasoned that Congress's failure to make this change retroactive "simply establishes that a defendant sentenced before the FSA is not *automatically* entitled to resentencing; it does not mean that the court may not or should not consider the effect of a radically changed sentence for purposes of applying § 3582(c)(1)(A)." *United States v. O'Bryan*, No. 96-10076-03-JTM, 2020 WL 869475, at *1 (D. Kan. Feb. 21, 2020). The court concurs that simply considering this radical sentencing change as a reason is not necessarily doing an end run on Congress. As Judge Marten quoted from another district court in this circuit: "'[i]t is not unreasonable for Congress to conclude that not *all* defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve *some* defendants on a case-by-case basis." *Id.* (quoting *United States v. Maumau*, No. 08-00758-GC-11, 2020 WL 806121, at *7 (D. Utah Feb. 19, 2020), *appeal pending*). Judge Marten has since emphasized that his *O'Bryan* decision only recognizes that the drastic sentencing disparity caused by the FSA's change to § 924(c) stacking could provide a basis for finding extraordinary and compelling reasons in combination with other factors:

> The court concluded in *O'Bryan* that the FSA's drastic revision of the sentencing regime applicable to section 924(c) offenses, combined with O'Bryan's rehabilitation progress, his good behavior while in custody, and the court's analysis of the 18 U.S.C. § 3553(a) sentencing factors supported a sentence reduction under § 3582(c).

*United States v. Davis*, No. 03-10157-1-JTM, 2020 WL 3037249, at *3 (D. Kan. Jun. 5, 2020), *appeal pending.* Thus, the courts in taking this approach are not so much making an end run around Congress but fulfilling Congress's intent of providing

9

judicial discretion inherent in compassionate release determinations based on the individual defendant's circumstances which may include a drastic sentencing disparity for serious § 924(c) convictions. As further evidence on this question of congressional intent, some courts have emphasized that Congress in the FSA titled the § 924(c) change, "'Clarification of Section 924(c) of Title 18, United States Code'" which suggests "that Congress never intended the statute to result in a 'stacked' sentence." *United States v. Decator*, --- F.Supp.3d ---, No. CCB-95-0202, 2020 WL 1676219, at *4 (D. Md. Apr. 6, 2020), *appeal pending*; *see United States v. Adeyemi*, No. 06-124, 2020 WL 3642478, at *21-*22 (E.D. Pa. Jul. 6, 2020) (and cases cited therein); *United States v. Quinn*, --- F.Supp.3d ---, No. 91-cr-00608-DLJ-1, 2020 WL 3275736, at *4 (N.D. Cal. Jun. 17, 2020) ("Although this 'clarification' cannot explain the amendment's lack of retroactivity, it nonetheless bolsters the argument that unnecessarily harsh results under the prior version can, on a case-by-case basis, be grounds for a reduction.") *United States v. Jackson*, No. 08-20150-02-JWL, 2020 WL 2812764, at *5 (D. Kan. May 29, 2020) (citing and summarizing this justification as significant in the cases recognizing the FSA's amendment of 924(c) as a permissible reason).

Based on the authority and rationale cited and discussed above, the court concludes that Mr. Stewart's gross sentencing disparity of 15 years created by the stacking of § 924(c) convictions at the time of sentencing and by FSA's subsequent elimination of stacking as a "sentencing clarification" and the fact of Mr. Stewart having already served more than five of those additional fifteen years together

10

constitute a permissible "extraordinary and compelling" reason for considering a compassionate release consistent with the weight of the case law to date.

Asthma and COVID-19

Mr. Stewart argues as another extraordinary and compelling reason his asthma and his institutional exposure to COVID-19. Again, the burden rests with movant to show his circumstances warrant a sentencing reduction. As proof of his asthma, Mr. Stewart cites his PSR which reads, "According to the defendant, he enjoys good general health, but does suffer from asthma. Mr. Stewart indicates he has not required inhalers since adolescence." Citing CDC material, Mr. Stewart argues his asthma puts him at risk of more severe illness and complications from COVID-19. He does not cite nor mention receiving any institutional care and treatment for his asthma. The government accepts Mr. Stewart's assertion that he has asthma but disputes that it warrants compassionate release. While arguing generally the complications that asthma causes COVID-19 treatment, Mr. Stewart does not show his asthma to be moderate or severe as to rise to a particularized risk. He also submits evidence of only one positive case in his facility. Mr. Stewart's asthma and his institutional exposure to COVID-19 qualify as extraordinary and compelling reasons but they do not warrant early release on their own. The court will consider them along with the other factors.

Danger to the Community

The policy statement in Guideline § 1B1.13 requires that a defendant not be a danger to the safety of another person in the community, and the court finds

that this requirement is satisfied in this case. The government does not argue that Mr. Stewart's release presents any danger. His offenses of conviction were for violent felonies, but his incarceration began at age 26, and he is now 48 years old. He has spent almost half of his life in prison. His disciplinary record in prison does not suggest ongoing risks of dangerous behavior. His last prohibited act was nearly six years ago.

Section 3553(a) Factors

By the terms of § 3582(c)(1)(A), the Court must consider "the factors set forth in section 3553(a) to the extent they are applicable" in determining a sentence sufficient, but not greater than necessary. Those factors are: (1) the nature of the offense and the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable Guideline sentence; and (6) the need to avoid unwarranted sentence disparities among similarly-situated defendants. In evaluating these factors, the court has looked at not only what the parties have argued but has spoken with United States Probation Office which opined that Mr. Stewart's release would not be inconsistent with these factors.

The defendant's offenses were violent felonies with threatening conduct. At the time of sentencing, the defendant's personal history led the court to recommend that BOP designate Mr. Stewart to MCFP Springfield "or another appropriate level facility offering psychiatric and medical services." ECF# 62, p. 3. He

suffers from asthma that carries the risk of more complications with exposure to COVID-19. The length of his sentence here was largely driven by the mandatory stacking of his § 924(c) convictions with the statutorily mandated terms of imprisonment. A sentence of 22 years meets all the needs of a sentence for the offenses of conviction. The circumstances of the defendant's convictions did not warrant a term of imprisonment above the sentencing guidelines. Mr. Stewart has successfully obtained his GED and has received numerous certificates of completion for courses in culinary arts, construction, welding, stress management, drug education, fitness and business. He has demonstrated an effort to educate himself and to develop skills helpful for leading a law-abiding life upon release. He has submitted a written statement that summarizes his current regular work schedule at MCFP Springfield, that explains his intentions for not only working upon release but living and caring for his 78-year-old mother, and that asserts he no longer thinks or talks like a criminal, "because intelligent and respectable people don't break the law." ECF# 138-1, p. 1. He has already served a sentence more than five years longer than what would be imposed today for the same conduct. Remaining in prison would only exacerbate the sentencing disparity created by a sentencing practice which Congress ended with the FSA by clarifying its intent from the beginning. The Court finds that the § 3553(a) factors weigh in favor of reducing Stewart's sentence to time served. The defendant shall serve the previously imposed term of supervised release. An accompanying order will follow that will stay this order for up to 14 days for the reasons stated therein and other matters as needed.

IT IS THEREFORE ORDERED that the defendant Shawn Stewart's motion under 18 U.S.C. § 3582(c)(1)(A)(i) for compassionate release and reduction of his sentence to time served, ECF# 134, is granted, and a separate order shall follow.

Dated this 24th day of July, 2020, Topeka, Kansas.

/s Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge